**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBERT CORRIVEAU<br>10633 Summersong Way<br>Highlands Ranch, CO 80126<br><br>        Plaintiff,<br>  v.<br><br>FLSMIDTH INC.<br>1110 American Parkway N.E.<br>Allentown, PA 18109<br><br>        Defendant. | CIVIL ACTION<br><br>No. _____<br><br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. This action has been initiated by Robert Corriveau (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against FLSmidth Inc. (hereinafter, "Defendant") for breach of contract and for violations of stage wage law(s). The crux of Plaintiff's legal claims herein is that Defendant failed to pay Plaintiff all compensation (and benefits) owed when terminating Plaintiff, as required under both state law and Plaintiff's contractual entitlements. As a direct consequence of Defendant's improper actions, Plaintiff seeks damages as set forth herein.

**JURISDICTION AND VENUE**

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1332 because there is complete diversity, and Plaintiff is seeking in excess of §1332 jurisdictional (financial) thresholds (exclusive of costs and interest). By way of more specificity:

    (a) Plaintiff is a resident, citizen and domiciliary of Colorado (residing at the above-captioned address).

  (b) Defendant is incorporated in the State of Delaware, and Defendant operates from two (2) principal places of business (in Pennsylvania at the above-captioned address and in Utah). These two (2) locations collectively comprise the joint headquarters of Defendant in the United States.

  (c) In addition to there being complete diversity (as outlined *supra*), Plaintiff seeks and is entitled to well in excess of $75,000.00 exclusive of costs and interest (as evident from the face of this pleading, *see infra*).

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this State and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny. Defendant further selected Pennsylvania as the appropriate forum for litigation.[1]

4. Pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), venue is properly laid in this district because a substantial portion of of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district (by way of decision making and management), and Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

## **PARTIES**

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption. Plaintiff is a resident, domiciliary, and citizen of Colorado.

---

[1] Within Plaintiff's Employment Agreement, Defendant memorialized in a choice of venue <u>and</u> choice of law clause that Plaintiff <u>must</u> file his claims in Pennsylvania courts.

7. Defendant operates as a global engineering, equipment, and service provider for the cement and minding industries. It is internationally headquartered and managed from Denmark. Defendant's U.S.-based operations are incorporated in the State of Delaware, and Defendant operates from two (2) principal places of business in the United States (in Pennsylvania at the above-captioned address and in Utah). As aforesaid, these two (2) locations collectively comprise the joint headquarters of Defendant in the United States.

8. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

9. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10. Plaintiff was employed for nearly eight (8) years at TK Mining (a segment of Thyssenkrupp Industrial Solutions (USA) Inc. (hereinafter, "TK"), and roughly 25 years in total through organizational changes. As of Plaintiff's last few years of employment with TK, he was employed as its Country Head USA.[2]

11. By in or about 2022, Defendant (and its enterprise as a whole) had completed an acquisition of TK.

---

[2] In the interest of completeness, Plaintiff originally worked since in or about 1997 for Krupp Robins, which was then acquired by and became ThyssenKrupp Robins. Plaintiff continued to work under different corporate entities of Thyssenkrupp until ultimately working for TK as set forth herein. Thus, inclusive of predecessor entities (that changed through acquisitions or corporate restructuring over time), Plaintiff worked continually for Defendant (and its predecessor entities) for roughly twenty-five (25) years.

12. In October of 2022, Plaintiff entered into a contract with Defendant, referred therein as an "Employment Agreement" (hereinafter referred to as the "Agreement"). Pursuant to the Agreement:

    (a) Plaintiff was to "serve as the Head of the Product Line, Conveyors." *See* Agreement, at ¶ 1.2.2.

    (b) Plaintiff was to continue working "with no fixed termination date," unless terminated in accordance with the Agreement. *Id.* at ¶ 1.3

    (c) Plaintiff was initially paid a base salary of $225,000 (apart from other forms of compensation), which was increased over his tenure. *Id.* at ¶ 2.1. Other compensation included but was not limited to numerous pension or bonus plans, as well as various other benefits and car allowances.[3]

13. According to the Agreement (at ¶ 3.4), Defendant could terminate Plaintiff <u>without cause</u> and "for Convenience" under ¶ 3.4 of the Agreement. This Section of the Agreement states:

> **3.4 Termination for Convenience.** Company may terminate this Agreement at any time for Company's convenience and without Cause upon 60 days' prior written notice to Employee.
>
>     3.4.1 Alternatively, Company may elect at its sole discretion to place Employee on a leave of absence during the notice period.
>
>     3.4.2 This Agreement shall remain in effect for all purposes during the notice period, and Employee's employment shall continue in effect during that period.
>
>     3.4.3 Upon expiration of the notice period, Employee's employment shall automatically end and Employee shall not be entitled to any further salary or benefits, except for unpaid salary earned prior to the termination and any accrued, vested, and other benefits that Company is obligated to pay under its policies and/or benefit plans.

14. Pursuant to the Agreement, if Plaintiff is terminated pursuant to ¶ 3.4, Plaintiff is entitled to "Severance" as defined in Section 3.7 of the Agreement. This Section of the Agreement states Plaintiff shall receive: (a) "one-half of his annual base salary" (payable as a lump sum); (b)

---

[3] As of termination, Plaintiff's base salary had increased to $232,590.00.

"additional separation pay equivalent to six months of [Defendant's] portion of the monthly health insurance premium in a lump sum payment; and (c) "outplacement services" valued up to "$9,500."

15.     If Plaintiff is terminated in accordance with Section 3.4, which shall hereinafter be referred to as a "Convenience Termination," Plaintiff would thus be entitled to well over $100,000.00 in severance base pay, outplacement services, and health insurance compensation. This is <u>in addition</u> to many other benefits, bonuses, pension, and other entitlements as provided for in the Agreement and incorporated within corporate policies.

16.     Plaintiff worked under varying management during his tenure (primarily due to changes in corporate control, reorganizations and structural changes). However, as of Plaintiff's termination from employment, Plaintiff was working under Julian Soles ("Soles" – Products Business Line President) and Mikko Keto ("Keto" – Group CEO).

17.     On (Thursday) September 18, 2025, Plaintiff was informed his employment was being terminated pursuant to Section 3.4 of his Agreement ("Termination for Convenience"). He was given "60 days'" written notice of his separation in accordance with the terms of his Convenience Termination. The end of the 60 days' notice period was on (Monday) November 17, 2025.

18.     The letter to Plaintiff (signed by Prathima Adluri, Head of Leadership Business Partnering) terminating him <u>without</u> cause *and merely for convenience* stated:

> This letter serves as formal written notice that your employment with FLSmidth Inc. ("Company") as Head of Product Line, Conveyors will terminate effective November 18, 2025 ("Termination Date").
>
> In accordance with Section 3.4.1 of your Employment Agreement dated October 1, 2022 ("Employment Agreement"), you are being placed on a leave of absence effective today, September 18, 2025, for the duration of your 60-day notice period. During this time, you will remain

5

employed and continue to receive your regular compensation and benefits.

At the conclusion of your notice period, your employment with the Company will terminate. You will receive severance pay and benefits in connection with this termination in accordance with Section 3.7 of your Employment Agreement. We will provide you with the Company's Release Agreement under separate cover, which will outline the severance terms and other details prior to your Termination Date.

Please let us know if you have any questions regarding the above. Thank you.

19. By letter dated November 18, 2025, Plaintiff was informed that Defendant decided to change his termination that occurred months earlier (<u>and</u> following his 60-days' notice period post-termination notification) to a termination for "cause."

20. The post-termination letter (signed by Soles) *attempting to (impermissibly) retroactively change the rationale* for Plaintiff's termination (that had already previously occurred) stated:

> This letter serves as an update to and replaces the notice of termination provided to you on September 18, 2025, which stated that your employment with FLSmidth Inc. ("Company") was being terminated under Section 3.4 of the Employment Agreement dated October 1, 2022 ("Employment Agreement"). Section 3.4 provides for termination for convenience.
>
> After you were placed on the 60-day notice leave of absence, information came to light which changed the decision previously made by the Company to terminate your employment for convenience. Based on that information, the Company has determined that your employment is being terminated **for cause, effective immediately** pursuant to Section 3.3 of the Employment Agreement. This decision is based on your conduct relating to the $14 million USD Oyu Tolgoi claim, in which you exceeded your authority and took steps that exposed the Company to operational and financial risk. This conduct meets the definition of "Cause" in the Employment Agreement.
>
> As a result of this termination **for cause**, you will not be entitled to any severance or other benefits under Section 3.7 of your Employment Agreement. All compensation, including final pay, accrued unused Paid Time Off and any applicable bonuses, has been paid. There are no outstanding wages. This decision is final and effective immediately.

21. The attempted *retroactive* post-termination and post-notice change of Plaintiff's termination rationale by Defendant was a breach of contract, unacceptable, and absurd for reasons including but not limited to the following:

> (1) Defendant <u>made an election</u> and exercised a decision to terminate Plaintiff without cause and merely for convenience. No provision of the Agreement authorizes, permits, or allows for Defendant to change its election post-termination and post-notice. Doing so was a clear breach of contract through non-payment of contractually-owed compensation.[4]
>
> (2) Even if Defendant were permitted to retroactive change a (prior) contract election (which Plaintiff adamantly disputes), Plaintiff <u>could not possibly</u> have engaged in conduct warranting a "cause" based termination under the Agreement (as outlined more below).

22. In its letter dated November 18, 2025, retroactively changing a prior contract election, Defendant references that the definition of "Cause" is met because Plaintiff engaged in "conduct relating to the $14 million USD Oyu Tolgoi claim, in which [Plaintiff] exceeded [his] authority and took steps that exposed the Company to operational and financial risk." Plaintiff, in the interest of completeness herein, provides the following short response to such absurd and uninformed (vague) allegations:

> (1) Plaintiff was never warned, disciplined, or the subject of any admonishment about or concerning anything related to the rationale for his "cause" termination as set forth in the 11/18/25 correspondence by Defendant.
>
> (2) Defendant did not so much as proverbially bother to even pick up the phone or ask Plaintiff (through any medium of communication) a single question in advance of feigning that his termination was being retroactively changed to a cause-based termination.
>
> (3) Plaintiff worked in a senior leadership role as Head of Product Line overseeing 7-figure, 8-figure, and 9-figure projects all over the world (in different countries). Plaintiff had extensive authority and for example from 2022 – 2023,

---

[4] Permitting former employers to change prior termination decisions and prior contract elections for termination reasoning months or years after an election had been made to avoid various severance or other legal obligations under the agreement would set an unmanageable precedent.

7

Plaintiff helped reduce cost risks with Oyu Tolgoi (hereinafter, "OT") by more than $10 million dollars.

(4) For the span of Plainiff's career with Defendant, there were many ongoing risks, problems, delays, and other complications associated with OT through no fault of Plaintiff. Plaintiff continually resolved matters to the best of his abilities associated with the OT relationship and mitigated then-existing problems.

(5) When Plaintiff was initially given responsibilities associated with OT as far back as 2019, the prior Head of Group had separated. The project was operating at a -7% margin on a $100 million project. Through extensive efforts over time, Plaintiff was able to bring the project to a +1% margin. During such efforts, Plaintiff exercised extensive authority to resolve financial hemorrhaging and horrible management by Defendant as a whole (predating his involvement or oversight).

(6) On the same day as Plaintiff's Convenience Termination when he was terminated with <u>no notice and abruptly</u> (and placed on garden leave without expectations of work during his 60-day notice period), Plaintiff had a prescheduled meeting with the OT Project Director to discuss any outstanding matters or concerns later in the day (**but was terminated first**). Plaintiff was immediately locked out of (and blocked from) all access to Defendant's devices, email(s), and databases. Plaintiff told Soles who communicated his termination to him about the anticipated meeting with OT later in the day and offered to still handle the meeting. Defendant declined and said Plaintiff was terminated for convenience, barring any further communication by Plaintiff with any third parties. Plaintiff thus told other management within Defendant to try to fill in since Plaintiff was so abruptly terminated to make sure the meeting was properly handled.

(7) It is not Plaintiff's fault that Defendant failed to communicate with Plaintiff, failed to discuss transition of multi-million-dollar clients, and failed to perform a standard business handoff. That is <u>the very purpose</u> of a 60-day notice period so Plaintiff can share information, ensure client handoffs, and to advise of outstanding matters.

(8) Upon information and belief, following Plaintiff being notified of termination (and being fully denied all access to Defendant information or communications), Defendant's executive leadership personnel attempted to address or resolve any concerns of OT in a grossly incompetent manner. Such leadership lacked basic details, full information, and failed to even consult with Plaintiff <u>or</u> other management working with or in possession requisite knowledge of OT.

(9) Plaintiff can only presume that Defendant's incompetence and gross neglect by terminating senior leadership (such as Plaintiff) abruptly with <u>zero</u>

8

<blockquote>communication or transition effort was the sole reason Defendant likely mishandled its relationship with OT and thus sought to retroactively recharacterize a prior contract termination (as if for cause).</blockquote>

23. As of early 2025, it was announced publicly that Virta Inc. ("Virta") was acquiring a conveyer brand from Defendant. It was documented as of July 2025 within Defendant: "Virta will not take [Plaintiff] (est. cost of $150K + German pension obligations) Should be considered as part of purchase price discussion."

24. **By mid-2025, it was already known** within Defendant (and by Virta) that Plaintiff would be released or separated without cause as part of a business acquisition (thus triggering his termination for convenience). When Plaintiff was terminated for convenience, it came as no surprise - - as Plaintiff and Defendant anticipated Plaintiff to be terminated for no cause for numerous months. The manner in which Plaintiff was in fact terminated though (with no communication or transition) was shocking and thus may have caused Defendant to improperly and recklessly handle some matters (including with OT). But the point herein is that Plaintiff's termination for no cause was <u>already known in mid-2025</u>, even well before its ultimate communication to him of his (no-cause) for-convenience termination.

25. Defendant has failed to pay Plaintiff bonuses, pension entitlements, other benefits, and well over $100,000.00 in severance compensation that is contractually owed to Plaintiff. Such compensation is also owed to Plaintiff under applicable state law(s).

26. "Wages" governed by the Pennsylvania Wage Payment & Collection Law ("PWPCL") includes "fringe benefits or wage supplements." *See* 43 P.S. § 260.2a. "Fringe Benefits or Wage Supplements" "include all monetary employer payments to provide benefits under **any employee benefit plan**," . . . "**as well as a separation" pay**. *Id.* (Emphasis added).

27. Plaintiff's severance and separation pay is a "wage" as defined under the PWPCL. *See e.g. Tisa v. Beasley FM Acquisition Corp*, 343 F. App'x 793, 795 (3d Cir. 2009)(affirming jury verdict in favor of plaintiff for breach of contract <u>and</u> PWPCL when the employer tried to pretextually claim "insubordination" as "cause" to avoid severance while offering substantially less severance than the contract otherwise entitled - - a case very similar to Plaintiff's scenario herein); *Shaer v. Orthopaedic Surgeons of Cent. Pa., LTD.,* 2007 PA Super 371 (Pa. Sup. Ct. 2007)(reversing lower court and explaining "severance" is governed by the WPCPL).

28. Under the PWCPL, Plaintiff is entitled to: (a) all wages, benefits, pension and bonuses owed, all of which constitute "wages" or "benefits" under the PWPCL; (b) liquidated damages, as dictated by the PWPCL (*See* § 260.10; and (c) to all costs and legal fees associated with collections or litigations for non-payment(s) as outlined *supra*.[5]

## COUNT I
### Breach of Contract

29. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

30. Plaintiff had an employment contract with Defendant, as there was an offer, consideration, and acceptance. As outlined *supra*, it contained memorialized terms of compensation and severance benefits.

---

[5] *See* 43 Pa. Stat. Ann. § 260.9f ("The court in any action brought under this section **shall**, in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs for reasonable attorneys' fees of any nature to be paid by the defendant.")(Emphasis added).

31. Defendant terminated Plaintiff without cause, but failed to pay Plaintiff all wages, payments, benefits, bonuses and "severance."[6] Defendants exaggerated or feigned a rationale to retroactively terminate Plaintiff for cause to avoid full contractual obligations.

32. Defendants' actions of breach of contract directly and proximately caused Plaintiff a financial loss (and contractual entitlement) of well over $100,000.00 in financial harm.[7]

**Count II**
**Violations of the Pennsylvania Wage Payment & Collection Law ("PWPCL")**
**(Unpaid Wages / Benefits / Bonuses)**

33. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

34. Plaintiff was not paid full bonus income, incentives, compensation, pension entitlements, or other benefits or severance contractually assured him upon separation from employment.

35. As a result, Plaintiff is entitled to owed wages, liquidated damages, attorney's fees, and other legal or equitable remedies.

36. These actions as aforesaid constitute violations of the PWPCL.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay, benefits, equity, options, incentives, bonuses, other forms of tangible or

---

[6] Since this pleading is for notice purposes only, Plaintiff does not specify by policy all of the other exact bonuses, pension, and entitlements he was not paid. Such information will be calculated during the course of discovery.

[7] Plaintiff will be seeking in excess of $350,000.00 in harms during the course of this lawsuit. But Plaintiff continually references the more-than $100,000.00 phrasing to establish the ease in which diversity jurisdiction of this Court is established over all claims asserted in this lawsuit. Plaintiff will be seeking more than $116,000 in 6 months of base severance and in excess of $350,000.00 when also including STIP, LTIP, Pension, and other benefits lost and/or not paid.

intangible compensation Plaintiff would have received had it not been for Defendant's illegal (and breach of contract) actions, including but not limited to any bonuses, incentives, pension(s), severance and/or other compensation owed;

      B.      Plaintiff is to be awarded liquidated damages, as permitted by applicable law;

      C.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

      D.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

      E.      Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

      Respectfully submitted,

      **KARPF, KARPF, & CERUTTI, P.C.**

By:

Ari R. Karpf, Esq. (91538)
8 Interplex Drive
Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801
akarpf@karpf-law.com

Date:  December 18, 2025

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Robert Corriveau | : | CIVIL ACTION |
| v. | : | |
| FLSMIDTH Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (x)

| 12/18/2025 | [signature] | | Plaintiff |
|---|---|---|---|
| **Date** | **Attorney-at-law** | | **Attorney for** |
| 215-639-0801 | 215-639-4970 | | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction:  Defendants place of business

---

**RELATED CASE IF ANY:**  Case Number:_____  Judge:_____

1. Does this case involve property included in an earlier numbered suit?  Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?  Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?  Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.  Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

A.  *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Wage and Hour Class Action/Collective Action
6. ☐ Patent
7. ☐ Copyright/Trademark
8. ☐ Employment
9. ☐ Labor-Management Relations
10. ☐ Civil Rights
11. ☐ Habeas Corpus
12. ☐ Securities Cases
13. ☐ Social Security Review Cases
14. ☐ Qui Tam Cases
15. ☐ Cases Seeking Systemic Relief  *see certification below*
16. ☐ All Other Federal Question Cases. *(Please specify)*:_____

B.  *Diversity Jurisdiction Cases:*

1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify)*:_____
7. ☐ Products Liability
8. ☐ All Other Diversity Cases: *(Please specify)*_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
CORRIVEAU, ROBERT

### DEFENDANTS
FLSMIDTH INC.

**(b)** County of Residence of First Listed Plaintiff: Douglas
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Lehigh
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [X] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [X] 4 |
| Citizen of Another State | [X] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane / 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability / 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability / 368 Asbestos Personal Injury Product Liability | | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | | 835 Patent - Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | | 840 Trademark | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | **PERSONAL PROPERTY** | **LABOR** | 880 Defend Trade Secrets Act of 2016 | 470 Racketeer Influenced and Corrupt Organizations |
| 160 Stockholders' Suits | 350 Motor Vehicle / 370 Other Fraud | 710 Fair Labor Standards Act | | 480 Consumer Credit (15 USC 1681 or 1692) |
| 190 Other Contract | 355 Motor Vehicle Product Liability / 371 Truth in Lending | 720 Labor/Management Relations | **SOCIAL SECURITY** | 485 Telephone Consumer Protection Act |
| 195 Contract Product Liability | 360 Other Personal Injury / 380 Other Personal Property Damage | 740 Railway Labor Act | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 196 Franchise | 362 Personal Injury - Medical Malpractice / 385 Property Damage Product Liability | 751 Family and Medical Leave Act | 862 Black Lung (923) | 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 790 Other Labor Litigation | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | 791 Employee Retirement Income Security Act | 864 SSID Title XVI | 891 Agricultural Acts |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | | 865 RSI (405(g)) | 893 Environmental Matters |
| 230 Rent Lease & Ejectment | [X] 442 Employment | 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | 895 Freedom of Information Act |
| 240 Torts to Land | 443 Housing/ Accommodations | 530 General | | 870 Taxes (U.S. Plaintiff or Defendant) | 896 Arbitration |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment | 535 Death Penalty | **IMMIGRATION** | 871 IRS—Third Party 26 USC 7609 | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | **Other:** 540 Mandamus & Other | 462 Naturalization Application | | 950 Constitutionality of State Statutes |
| | 448 Education | 550 Civil Rights / 555 Prison Condition / 560 Civil Detainee - Conditions of Confinement | 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28USC1332

Brief description of cause:
Breach of contract and violations of the PA Wage Payment & Collection Law.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE: _____    DOCKET NUMBER: _____

DATE: 12/18/2025
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE